# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                      No. CR 17-2386 JB

NICHOLAS BACA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Investigation Report, filed August 6, 2018 (Doc. 30)("Objections"). The primary issues are: (i) whether the Defendant Nicholas Baca "recklessly endanger[ed] the safety of the aircraft," warranting a base offense level of 18 under U.S.S.G. § 2A5.2(a)(2), see Presentence Investigation Report ¶ 8, at 4, filed July 26, 2018 (Doc. 28)("PSR"), when Baca intentionally pointed a laser pointer at a police helicopter, temporarily blinding the pilot, but there is no evidence that Baca was aware of the risks of his conduct; and (ii) whether the Court should apply a 6-level enhancement under U.S.S.G. § 2A5.2(b)(1)(B)(ii) for use of a dangerous weapon, see PSR ¶ 14, at 4, when Baca used a laser pointer in the commission of the underlying offense, but there is no evidence that Baca used the laser pointer in any way not contemplated by the underlying offense. The Court concludes that: (i) the PSR's base-offense-level calculation is inaccurate, because there is no evidence on the record that Baca was aware of the risks of his conduct, as is required for a finding of recklessness, and, thus, the Court sustains Baca's Objection to that calculation and concludes that the appropriate base offense level is 9, pursuant to § 2A5.2(a)(4) ; and (ii) the 6-level enhancement under U.S.S.G. § 2A5.2(b)(1)(B)(ii) does not apply, because § 2A5.2(b)(1) only applies if "(A) subsection (a)(1)

or (a)(2) applies; and . . . (ii) a dangerous weapon was otherwise used." Because the Court determines that Baca's base offense level, pursuant to § 2A5.2(a)(4), is 9, § 2A5.2(b)(1) does not apply, and there should be no increase for a dangerous weapon. Accordingly, the Court sustains both of Baca's Objections.

## FACTUAL BACKGROUND

At the Plea Hearing, held before the Honorable Steven C. Yarbrough, United States Magistrate Judge for the District of New Mexico, Baca pled guilty to the Indictment. See Clerk's Minutes at 1, filed May 8, 2018 (Doc. 26)("Plea Hearing Minutes"). The Indictment charges that Baca "knowingly aimed the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States and at the flight path of such an aircraft" in violation of 18 U.S.C. § 39A(a). Indictment, filed September 6, 2017 (Doc. 1). There is a plea agreement in this case. See Plea Agreement, filed October 12, 2018 (Doc. 42).

The Court takes the facts from the PSR. No one has objected to the PSR's recitation of the facts, so unless someone objects or wants an evidentiary hearing to present more facts, they will serve as the Court's findings of fact for purposes of this sentencing. The PSR describes the offense conduct as follows:

6. On July 29, 2017, the defendant pointed a handheld laser at [Bernalillo County Sheriff's Office ("BCSO")]'s helicopter in flight. The laser hit the pilot's eyes, temporarily blinding the pilot. The pilot was able to regain focus. The helicopter was hit again with the laser. The defendant fled the area in his vehicle and was followed by the helicopter. Another officer located the defendant and attempted a traffic stop of the defendant, but he failed to stop. The defendant increased his speed and turned his headlights off. He failed to yield at two stop signs. The officer lost sight of the defendant, but the helicopter continued to

follow him. The defendant drove through a residential neighborhood in circles. He stopped at a drainage ditch and walked north.

7. The defendant then jumped over a wall and stayed in a yard for a short period. He attempted to go to the front of the residence, but an officer arrived to the location and arrested him. The laser was located in the defendant's vehicle. Next to the laser was a small piece of plastic containing heroin (less than one gram).

PSR ¶¶ 6-7, at 3.

## **PROCEDURAL BACKGROUND**

On September 6, 2017, a federal grand jury charged Baca with one count of aiming a laser pointer at an aircraft, in violation of 18 U.S.C. § 39(a). See Indictment at 1. On May 8, 2018, Baca pled guilty to the Indictment that he knowingly aimed the beam of a laser pointer at an aircraft. See Plea Hearing Minutes at 1; Indictment at 1. In the Indictment, he specifically pled to the following facts:

On or about July 29, 2017, in Bernalillo County, in the District of New Mexico, the defendant, NICHOLAS BACA, knowingly aimed the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States and at the flight path of such aircraft. In violation [of] 18 U.S.C. § 39A(a).

Indictment at 1. In the Plea Agreement he specifically admitted the following facts under penalty of perjury:

a. On or about July 29, 2017, in Bernalillo County, in the District of New Mexico, I knowingly aimed the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States and at the flight path of such aircraft. Specifically, I pointed a laser pointer at a helicopter which I later learned was operated by the Bernalillo County Sheriff's Department.

b. It was not my intent in aiming the laser pointer at the helicopter to cause harm. I was under the influence of narcotics at the time and was bored, and, while

I was aware of what I was doing, I did not know that I could hurt anyone by pointing the laser pointer at the helicopter.

Plea Agreement ¶ 8, at 4.

In the PSR, the United States Probation Office ("USPO") calculated Baca's base offense level at 18, pursuant to U.S.S.G. § 2A5.2(a)(2) and applied a 6-level enhancement under U.S.S.G. § 2A5.2(b)(1)(B)(ii) for use of a dangerous weapon. Baca objects to the PSR's finding that he recklessly endangered the aircraft and contends that the applicable base level offense is 9 and not 18. See Objections at 4. Baca also objects to paragraph 14 of the PSR and the application of a 6-level enhancement for the use of a dangerous weapon, contending that applying the enhancement would constitute impermissible double counting, because Baca's use of the laser pointer is already factored into the base offense level calculation. See Objections at 4-5. Baca further contends that, because the appropriate base offense level is 9, subsection (b) of § 2A5.2 does not apply. See Objections at 5. Assistant United States Attorney George Kraehe concurs in Baca's objections. See Objections at 5. The Court will further describe these Objections, with USPO's response, in its analysis.

**RELEVANT LAW REGARDING THE GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors

that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of

several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); and Rita v. United States, 551 U.S. at 351.  Instead, the trial

court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[1] Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first

---

[1]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges]

task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." <u>Kimbrough v. United States</u>, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus,

---

based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

<u>United States v. Nolf</u>, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

no variance from the Guidelines sentence was warranted.  See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).  On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and its Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S.

at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted).  In United States v. Booker, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi*'s requirement."(alterations and internal quotations marks omitted)).  The Supreme Court has recently held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99, 101 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts which government witnesses indicated that they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See United States

v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63-78 months to 121-151 months.  See 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate

_____

[2]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases the sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6 (10th Cir. 2014)(unpublished)[3](holding that, after Alleyne v. United States, "[i]t is well-established that

_____

is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[3]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their

sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"). The Court has noted

> that, although the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

**LAW REGARDING RECKLESS ENDANGERMENT UNDER U.S.S.G. § 2A5.2(a)(2)**

U.S.S.G. § 2A5.2(a)(2) provides a 9-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2A5.2 "if the offense involved recklessly endangering the safety of: (A) an airport or an aircraft; or (B) a mass transportation facility or a mass transportation vehicle." U.S.S.G. § 2A5.2(a)(2). Authors' comment 2(b) to U.S.S.G. § 2A5.2 states that neither

---

persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished opinions are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that <u>United States v. Hendrickson</u> has persuasive value with respect to material issues and will assist the Court in its preparation of this Memorandum Opinion and Order.

U.S.S.G. § 2A5.2 nor the commentary to it define the term "recklessly." U.S.S.G. § 2A5.2 cmt. 2(b). The Tenth Circuit, and the United States Courts of Appeals for the Ninth and Eleventh Circuits, in cases under this guideline, have used the definition of 'recklessly' that the commentary to § 2A1.4 provides. Under that definition, a defendant must be "aware of the risk created by his conduct." U.S.S.G. § 2A1.4 cmt. 1. See United States v. Lamons, 532 F.3d 1251, 1267-68 (11th Cir. 2008); United States v. Naghani, 361 F.3d 1255, 1263 (9th Cir. 2004)("Naghani") (citing U.S.S.G. § 2A1.4 cmt. 1); United States v. Jenny, 7 F.3d 953, 956 (10th Cir. 1993).

The commentary to § 2A1.4 defines "reckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 cmt. 1. The United States Courts of Appeals for the Fourth and Eighth Circuits have also applied the definition of "recklessly" from § 2A1.4 in cases under § 2A5.2. See United States v. Rogers, 881 F.3d 1054, 1055-56 (8th Cir. 2018); United States v. Clarkson, 148 Fed. App'x 437, 441 (6th Cir. 2005)(unpublished); United States v. Bocook, 59 F.3d 167, 1995 WL 371250, at *2 (4th Cir. 1995)(unpublished table decision)(applying the definition of recklessness in § 2A1.4). Pursuant to the definition of recklessness in the commentary to U.S.S.G. § 2A1.4, to support a 9-level elevation of the base offense level from 9 to 18 under U.S.S.G. § 2A5.2, the United States must present some evidence on the record that a defendant was aware of the risks of his or her conduct. See United States v. Rogers, 881 F.3d at 1056 ("The record must show, as it did here, that the defendant was aware of

the risk to the aircraft and grossly deviated from the standard of care in disregarding it."); United States v. Rodriguez, 790 F.3d 951, 959-60 (9th Cir. 2015)(concluding that the government failed to show recklessness sufficient to support applying the reckless endangerment enhancement, where the government presented no "evidence of what even an average person would know about the effects of aiming a laser at an aircraft"); United States v. Gardenhire, 784 F.3d 1277, 1280 (9th Cir. 2015)(concluding that the district court improperly applied the reckless endangerment enhancement where the record was devoid of evidence that the defendant was aware of the risk created by his conduct).

Courts of Appeals have provided guidance to district courts regarding what evidence can be enough to support an application of the reckless endangerment base offense level enhancement under U.S.S.G. § 2A5.2. In Naghani, the Ninth Circuit concluded that the district court properly found that Naghani was aware of the risks of his conduct, given evidence that the United States presented of "the entire course of his alleged conduct," including "his smoking, obstreperous behavior and threats." Naghani, 361 F.3d at 1263. In Naghani, the defendant was an airplane passenger who lit a cigarette in the lavatory, and then later issued verbal threats, including a threat to "kill all Americans." Naghani, 361 F.3d at 1258. The district court found that Naghani was aware of the risks of his conduct, because, when he lit a cigarette in the lavatory, the smoke alarm sounded -- providing him with a clear warning that his conduct was unsafe -- and when he issued threats and acted aggressively, flight attendants restrained him and spoke to him about potential consequences of his behavior -- making it clear to him that he was dangerously interfering with

the aircraft's operations.  <u>Naghani</u>, 361 F.3d at 1258-59.  In <u>United States v. Gonzalez</u>, a passenger on a Southwest Airlines flight made a bomb threat and the Ninth Circuit, reviewing the district court's application of the reckless endangerment enhancement to his sentencing calculation under the Guidelines, concluded that "diversion of the aircraft, behavior that instills fear and terror in the other passengers or the flight crew, and threats that could result in harm to the aircraft are sufficient, depending on the combination of circumstances, to constitute reckless endangerment of the safety of the aircraft."  <u>United States v. Gonzalez</u>, 492 F.3d 1031, 1037-38 (9th Cir. 2007). The Ninth Circuit stated: "It doesn't take an aeronautical engineer to recognize that a threat of a bomb in that environment and the havoc that such a threat might cause is a threat to the safety of the aircraft."  <u>United States v. Gonzalez</u>, 492 F.3d at 1038.  The Eighth Circuit concluded that a district court's finding of reckless endangerment was not clearly erroneous where the record contained an admission from the defendant's own attorney that the defendant's earlier behavior in turning a laser away from an automobile "established that he was aware of the danger of shining a laser at someone operating a vehicle" and a Special Agent's testimony that the defendant admitted to knowing that "shining a laser at an aircraft was wrong."  <u>United States v. Rogers</u>, 881 F.3d at 1056.

A finding of reckless endangerment may be supported solely by looking to the defendant's intentional conduct only where that conduct "obviously caused a risk of danger that was immediately apparent to them," often with visible consequences.  <u>United States v. Rodriguez</u>, 790 F.3d at 959.  <u>See</u> <u>United States v. Gardenhire</u>, 784 F.3d at 1282-83.  In the few federal cases

involving pointing lasers at aircraft -- often charged as violations of 18 U.S.C. § 39(a) and sentenced pursuant to U.S.S.G. § 2A5.2 -- courts have found that the dangers of lasing[4] aircraft are not obvious or immediately apparent.  See United States v. Gardenhire, 784 F.3d at 1281 (concluding that, because laser beams do not operate like normal beams of light, the risk of lasing aircraft is not immediately apparent), United States v. Rodriguez, 790 F.3d at 960 (concluding that the risks posed by lasers are not matters of common knowledge).  That a defendant intentionally hit or tried to hit an aircraft with a laser, therefore, does not suffice to demonstrate that the defendant was aware of the risks of his or her conduct, such that he or she recklessly endangered an aircraft.  See United States v. Gardenhire, 784 F.3d at 1280 (concluding that the defendant's statement to the FBI that he intentionally tried to hit an aircraft with his laser beam did not show that he was aware that, if he hit the jet, as intended, he could blind or distract the pilot); United States v. Rodriguez, 790 F.3d at 959 (concluding that the fact that a defendant intentionally and repeatedly pointed a laser at an aircraft does not mean that he or she knew the risks of his or her conduct).

## ANALYSIS

The Court sustains Baca's Objections.  The Court sustains Baca's Objection to the base offense level of 18 under § 2A5.2(a)(2), because the record is devoid of evidence that Baca was aware of the risks of his conduct, such that he recklessly endangered the aircraft in disregarding

---

[4]"Lasing" refers to the action of aiming a laser at, for instance, an aircraft.  See, e.g., Don't Let a Prank Lead to Prison, Fed. Aviation Admin. (last modified Oct. 24, 2018, 12:30 p.m.), https://www.faa.gov/education/highlight_reel/?highlight=140418_laser_fbi ("A federal law passed in 2012 made lasing aircraft punishable by up to five years in prison.").

those risks.  The Court sustains Baca's Objection to the 6-level enhancement for use of a dangerous weapon, because, given that the appropriate base offense level here is 9, the enhancement does not apply.

**I.      THE COURT SUSTAINS BACA'S OBJECTION TO THE BASE OFFENSE LEVEL OF 18 UNDER U.S.S.G. § 2A5.2(a)(2).**

Baca pled guilty to a violation of 18 U.S.C. § 39A, which makes it a crime to "knowingly aim[] the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States, or at the flight path of such an aircraft."  Objections at 2.  Baca objects to the 9-level enhancement of his base offense level applied in paragraph 13 of the PSR under § 2A5.2(a)(2), because, he asserts, there is "no evidence to support the finding" that he recklessly endangered the safety of an aircraft.  Objections at 1-2.  Section 2A5.2(a)(2) advises courts sentencing defendants to assign a base offense level of 18 if "the offense involved recklessly endangering the safety of: (A) an airport or an aircraft; or (B) a mass transportation facility or a mass transportation vehicle." U.S.S.G. § 2A5.2(a)(2).  Absent a finding of recklessness, the base offense level for a violation of 18 U.S.C. § 39A under the guidelines is 9.  See U.S.S.G. § 2A5.2(a)(4).  While U.S.S.G. § 2A5.2(a)(2) contains no definition of recklessness, Baca points to U.S.S.G. § 2A1.4 comment note 1, and the United States has not objected to that reference.  See Objections at 3.  U.S.S.G § 2A1.4 comment note 1 defines recklessness as a "situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation."  U.S.S.G. § 2A1.4 cmt n.1.

Here, Baca concedes that he knowingly pointed the laser pointer at the aircraft.  See Objections at 2.  Baca argues, however, that Congress passed 18 U.S.C. § 39A recognizing that "many people who point lasers at aircraft do not do so with the mens rea required for a § 32(a)(5) conviction."  Objections at 2 (citing United States v. Rodriguez, 790 F.3d at 961).  Baca argues that he was not aware of the consequences of lasing an aircraft -- "the fact that it could blind the pilot, or that it could cause an accident."  Objections at 3-4.  Baca asserts that there is not, in fact, even sufficient evidence to support that he knew the laser would reach the airplane.  See Objections at 4.  Baca contends that, without such evidence, the record cannot support the finding of recklessness pursuant to U.S.S.G. § 2A1.4 comment note 1 that is necessary for a base offense level of 18 pursuant to U.S.S.G. § 2A5.2(a)(2).  See Objections at 4.  Baca instead suggests that, pursuant to U.S.S.G. § 2A5.2(a)(4), the applicable base level offense is 9.  See Objections at 4.  Assistant United States Attorney Kraehe concurs in Baca's objection to the base offense level of 18.  See Objections at 5.

The USPO counters that the Court should look to Baca's sequence of actions.  Responding to Baca's Objection, the USPO states:

> **Response No. 1:** The defendant pointed a laser at a police helicopter, temporarily blinding the pilot and recklessly endangering the safety of the aircraft.  The pilot was able to regain focus.  The helicopter was hit again with the laser.  The defendant fled the area in his vehicle and was followed by the helicopter.  He continued to flee.  The defendant's behavior after his presence was known indicated he was aware of the danger of pointing his laser at an aircraft.  The enhancement for endangering an aircraft does not require actual harm to the aircraft, but the threatened or potential harm.  Therefore, the enhancement pursuant to USSG § 2A5.2(a)(2) was applied.

Addendum to the Presentence Report at 1, filed August 23, 2018 (Doc. 33)("Addendum")(emphasis in Addendum).

Pursuant to Baca's request, the Court will apply the definition of recklessness in the commentary to § 2A4.1. Neither U.S.S.G. § 2A5.2 nor the commentary to it defines the term "recklessly." U.S.S.G. § 2A5.2 cmt. 2(b). The Tenth Circuit, in cases under U.S.S.G. § 2A5.2, has used the definition of recklessly in the commentary to § 2A1.4. See United States v. Jenny, 7 F.3d 953, at 956. Pursuant to the definition of recklessness in the commentary to § 2A1.4, the United States must present some evidence on the record that a defendant was aware of the risks of his or her conduct to support a 9-level elevation of the base offense level in § 2A5.2 based on reckless endangerment. See United States v. Rodriguez, 790 F.3d at 959-60 (concluding that the United States failed to show recklessness sufficient to support applying the reckless endangerment enhancement, where the United States presented no "evidence of what even an average person would know about the effects of aiming a laser at an aircraft"); United States v. Gardenhire, 784 F.3d at 1280 (concluding that the district court improperly applied the reckless endangerment enhancement where the record was devoid of evidence that the defendant was aware of the risk created by his conduct).

In the few federal cases involving pointing lasers at aircraft -- often charged as violations of 18 U.S.C. § 39(a) and sentenced pursuant to U.S.S.G. § 2A5.2-- courts have found that the dangers of lasing aircraft are not obvious or immediately apparent. See United States v. Rodriguez, 790 F.3d at 960 (concluding that the risks posed by lasers are not matters of common knowledge);

United States v. Gardenhire, 784 F.3d at 1281 (concluding that, because laser beams do not operate like normal beams of light, the risk of lasing aircraft is not immediately apparent). That a defendant intentionally hit or tried to hit an aircraft with a laser, therefore, does not suffice to demonstrate that the defendant was aware of the risks of his or her conduct, such that he or she recklessly endangered an aircraft. See United States v. Rodriguez, 790 F.3d at 959 (concluding that the fact that a defendant intentionally and repeatedly pointed a laser at an aircraft does not mean that he or she knew the risks of his or her conduct); United States v. Gardenhire, 784 F.3d at 1280 (concluding that the defendant's statement to the FBI that he intentionally tried to hit an aircraft with his laser beam did not show that he was aware that, if he hit the jet, as intended, he could blind or distract the pilot). In United States v. Gardenhire, the defendant intentionally pointed a laser at a helicopter, hit it two or three times, and was sentenced pursuant to U.S.S.G. § 2A5.2(a)(2). See United States v. Gardenhire, 784 F.3d at 1280-81. The district court concluded, from that fact, that the defendant knew that he hit the aircraft, although the defendant stated that, while he pointed the laser at the aircraft, he did not see it hit the aircraft. See 784 F.3d at 1281-82. The Ninth Circuit concluded that, even if the defendant knew the laser beam struck the aircraft, that fact did not demonstrate his "awareness of the consequences of the beam strike -- the risk that the pilot could be blinded or distracted or the aircraft otherwise endangered." United States v. Gardenhire, 784 F.3d at 1282. The Ninth Circuit concluded that:

> [K]nowing that a laser beam can cause blindness when pointed directly at a person's eyes is very different than knowing that a laser beam can be distracting to pilots who are both enclosed in a cockpit and at least 2,640 feet away. Nor did the government submit any evidence of what even an average person would know

about the effects of aiming a laser beam at an aircraft. According to one of the lead investigators in this case, an officer pilot, the beam of a laser pointer that is "only the size of a pencil on the ground" can intensify to "12 inches in diameter depending on the distance." In other words, "the farther it gets away from the point of origin, the beam spreads out," thus increasing its hazardousness, a notion that is counterintuitive, especially when one considers that an ordinary light beam would grow fainter. Additionally, the laser pointer is particularly hazardous to an aircraft when the beam is refracted off the cockpit glass, which intensifies the light even more, resulting in a "bright, dazzling beam" that lights up the entire cockpit. That one knows that the laser is dangerous when pointed directly in a person's eyes does not mean that one knows about the beam's ability to expand and refract, rendering it particularly hazardous for pilots in an aircraft miles away, or that the danger is heightened at nighttime because the pilot's eyes have adjusted to the dark.

784 F.3d at 1281-82. The Ninth Circuit contrasted this situation with the facts in United States v. Gonzalez, in which a defendant was charged with making a reckless bomb threat, causing chaos aboard an aircraft. There, the Ninth Circuit concluded: "It doesn't take an aeronautical engineer to recognize that a threat of a bomb in that environment and the havoc that such a threat might cause is a threat to the safety of the aircraft." United States v. Gonzalez, 492 F.3d at 1038. In United States v. Gardenhire, the Ninth Circuit stated that, the risks of lasing aircraft are much less obvious and that the United States should have submitted, to support a finding of recklessness, some evidence to support the defendant's subjective awareness of the consequences of aiming a laser at an aircraft. See 784 F.3d at 1283.

Had the government submitted circumstantial or direct evidence that Gardenhire was aware of the laser's long-distance power, expansion capabilities, and ability to refract off the cockpit glass, the district court could have found subjective awareness. But it did not; nor did it demonstrate that as of six weeks after the effective date of 18 U.S.C. § 39A, "Aiming a laser pointer at an aircraft," the dangers of shining a laser at an aircraft were of general knowledge to the average person . . . .

United States v. Gardenhire, 784 F.3d at 1283. The Ninth Circuit rejected the application of a base offense level of 18. See 784 F.3d at 1285-86.[5] In United States v. Rodriguez, another case in which a defendant intentionally pointed a laser at a helicopter, both United States and defense experts testified that even an experienced laser professional could not tell how powerful a laser was by merely observing it, because "the human eye does not respond very well to measurement of optical power." 790 F.3d at 955-56. While the United States in United States v. Rodriguez argued that the fact that the defendant intentionally and repeatedly targeted the aircraft's cockpit with a light he knew was dangerously bright should suffice for a finding of recklessness, the Ninth Circuit disagreed. See 790 F.3d at 958-59. The Ninth Circuit explained that "Congress created § 39A to cover situations in which an individual's conduct causes unsafe flying conditions for

---

[5]It is not common knowledge what consequences or risks ensue when a person points a laser pointer at an airplane. As one article summarizes, "people tend to underestimate just how far the light can be thrown, or what happens to it once it settles on a passing airplane or helicopter." What Pilots See When You Shine a Laser Pointer at Aircraft, Mental Floss (June 23, 2015), http://mentalfloss.com/article/65424/what-pilots-see-when-you-shine-laser-pointer-aircraft ("What Pilots See"). Jason Stouder, who was convicted of the federal offense of pointing a laser at an aircraft, spoke to the Federal Bureau of Investigation ("FBI") about his motivations for his actions. He stated that he wanted to see "how far it goes and what it hit. The helicopter flew by and I made the decision to see if it would reach the helicopter. Obviously it did. But, in viewing the video I had no idea it illuminated the whole cockpit and blinded everybody inside." What Pilots See, supra. Another defendant convicted of the offense, Michael Brandon Smith, stated that he was bored, so he used his pocket-sized novelty laser pointer to see if it would reach the helicopter above him. What Pilots See, supra. In fact, there is such a lack of public understanding about the consequences of aiming a laser pointer at an aircraft that the FBI has experimented with campaigns to educate the public about the dangers of "lasing". See Protecting Aircraft from Lasers, FBI News (Feb. 11, 2014), https://www.fbi.gov/news/stories/protecting-aircraft-from-lasers.

pilots but prosecutors cannot prove whether that person . . . even understood the dangers lasers pose to aircraft." 790 F.3d at 961.

The Eighth Circuit held that a district court may "rely on a defendant's knowledge that a laser beam can blind or endanger a person on the ground to infer knowledge of the risk to a piloted aircraft." United States v. Rogers, 881 F.3d at 1056.[6] In a case on nearly identical facts to Baca's, where a defendant "repeatedly pointed a laser at a police helicopter, temporarily blinding the pilot, and pleaded guilty to one count of aiming a laser at an aircraft in violation of 18 U.S.C. § 39A," 881 F.3d at 1055, the Eighth Circuit concluded that the district court properly applied the reckless endangerment enhancement in § 2A5.2, where the record showed the defendant's awareness of the risks of his conduct. See United States v. Rogers, 881 F.3d at 1055-56. In United States v. Rogers, the district court received an exhibit with police reports including statements from a neighbor that the defendant shined a laser at his car, but then aimed it away, the defendant's attorney had admitted on the record that the defendant knew the risks of a laser when pointed at an automobile, and the defendant admitted to a Special Agent that he knew pointing a laser at an aircraft was illegal. See 881 F.3d at 1055-56. The Eighth Circuit stated that the 9-level enhancement for reckless endangerment should not be applied to every violation of 18 U.S.C. § 39A, but only where the record shows the defendant knew of the risk to the aircraft and grossly deviated from the standard of care in disregarding it. See 881 F.3d at 1056.

_____

[6]The Ninth Circuit disagreed with this proposition in United States v. Gardenhire, holding that knowledge that a laser beam could blind a person on the ground did not equate to knowledge of its consequences when aimed at an aircraft. See 784 F.3d at 1282.

Here, the record shows that Baca hit a BCSO helicopter in flight two times, fled, and then hid from officers. See PSR ¶ 6, at 3. Nothing on the record demonstrates that Baca was aware of the dangers or consequences of aiming the laser pointer at the aircraft. The PSR makes much of the fact that Baca fled, but it must also be noted that, when Baca was apprehended, heroin was also recovered from his vehicle, suggesting another possible motive for fleeing. See PSR ¶ 7, at 3. There is no factual finding to support that Baca fled because he was aware of the risks of his laser-pointing and that inference may not soundly be made. The USPO's response to Baca's Objection regarding his base offense level demonstrates only that he intentionally hit the helicopter -- conduct to which he pled. See Addendum at 1. The record is devoid of evidence that Baca, or even an average person, would know that, by pointing a laser at an aircraft, the pilot could be blinded or distracted, or that the safety of the aircraft could be endangered. Absent that evidence, the base offense level of 18 may not be applied. The PSR, accordingly, miscalculates Baca's base offense level at 18 pursuant to § 2A5.2(a)(2). The Court thus concludes that, pursuant to § 2A5.2(a)(4), the appropriate base level is 9.

## II. THE COURT SUSTAINS BACA'S OBJECTION TO A 6-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2A5.2(b)(1).

Section 2A5.2(b)(1) provides for a 4-level enhancement if "(A) subsection (a)(1) or (a)(2) applies; and . . . (ii) a dangerous weapon was otherwise used." Because the Court has determined that Baca's base offense level is 9 under § 2A5.2(a)(4), section § 2A5.2(b)(1) does not apply -- because it applies only if § 2A5.2(a)(1) or § 2A5.2(a)(2) -- and although Baca may have otherwise used a dangerous weapon, the 4-level enhancement does not apply.

Paragraph 14 of the PSR concludes that, pursuant to § 2A5.2(a)(2), Baca's base offense level is 18, and that, therefore, pursuant to § 2A5.2(a)(4), a 6-level enhancement applies.  See PSR ¶ 14, at 4.  Applying § 2A5.2(a)(4), the USPO first concludes that a laser pointer meets the definition of a dangerous weapon and, therefore, that a 4-level increase is applicable.  See PSR ¶ 14, at 4.  Because Baca's resulting offense level of 22 is less than 24, § 2A5.2(a)(4) advises increasing the offense level to 24 -- resulting in a 6-level enhancement for Baca.  See PSR ¶ 14, at 4.  Baca objects to the 6-level enhancement, arguing that there is no evidence that he "otherwise used" the laser pointer in any way not already factored into the base offense level and so applying the enhancement would constitute impermissible double-counting.  Objections at 4-5.  By way of response, USPO states:

> **Response No. 2:**  The defendant pointed the laser at the aircraft twice.  He subsequently fled from law enforcement.  The defendant's behavior after his presence was known indicated he knew he did something wrong.  The specific offense characteristic states to apply an enhancement if a dangerous weapon was otherwise used.  The laser meets the definition of a dangerous weapon.
>
> There is nothing in the application notes precluding the enhancement based on a specific conviction.  The base offense level takes into account the recklessness endangerment and the specific offense characteristic takes into account whether a dangerous weapon was used.  Therefore, the enhancement was applied pursuant to USSG § 2A5.2(b)(1)(B)(ii).
>
> It is noted that the USA PATRIOT Act led to the addition of subsection § 2A5.2(b) relating to the use of dangerous weapons.  According to the United States Sentencing Commission, the amendment to 2A5.2(b) was added to "address concerns that the current base offense level of 18 (in 2A5.2(a)(2)) for reckless endangerment may be inadequate in situations involving a dangerous weapon and reckless disregard for the safety of human life."  U.S.S.G. Supp. To Append. C, amend. 637, at 247 (2002).

Addendum at 1-2.

If the Court were to determine that Baca's base offense level is 18 pursuant to § 2A5.2(a)(2), the enhancement would apply. According to U.S.S.G. § 1B1.1 comment note 1(I), "otherwise used" with reference to a dangerous weapon "means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1 cmt. n.1(I). The commentary to § 2A5.2 notes that, for the term "otherwise used," the meaning is the same as that given in Application Note 1 of the Commentary to § 1B1.1. U.S.S.G. § 2A5.2 n.1. Application Note 1 of the Commentary to § 1B1.1 notes that multiple adjustments may be applied cumulatively even if both triggered by the same action. <u>See</u> U.S.S.G. § 1B1.1 cmt. n.4(B). Therefore, applying the enhancement for "otherwise using" the laser pointer by pointing it would not be double counting, although the application of the base offense level is also based on the same conduct.

Because the Court has determined that Baca's base offense level is that in § 2A5.2(a)(4), section § 2A5.2(b)(1) does not apply, and there should be no enhancement for a dangerous weapon. The Court sustains Baca's objection to the enhancement pursuant to U.S.S.G. § 2A5.2(b)(1)(B)(ii) for use of a dangerous weapon, applied in paragraph 14 of the PSR, concluding that it does not apply because the correct base offense level is that under U.S.S.G. § 2A5.2(a)(4), and the enhancement in § 2A5.2(b)(1)(B)(ii) does not apply to offenses charged at that base offense level.

**IT IS ORDERED** that the Defendant's Objections to the Presentence Report, filed August 6, 2018 (Doc. 30), are sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
George Kraehe
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Aric G. Elsenheimer
    Assistant Federal Public Defender
Federal Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*